# Rockford, Rock Island and St. Louis Railroad Co.

*v.*

## William Hillmer.

1. Evidence—*whether testimony is negative.* Where witnesses who, at the time of an accident at a railroad crossing, were within thirty yards of it, testify that they were in a situation to have heard a bell ring or whistle sound, if there had been any rung or sounded, and that they did not hear any, such testimony can not be regarded as negative testimony.

2. Negligence—*comparative, where both parties are guilty.* In a suit for damages occasioned by the negligence of the defendant, where the plaintiff has been guilty of some degree of negligence, yet, if it was slight in comparison with that of the defendant, which was gross, it will be no bar to a recovery.

3. Same—*duty in running cars at public crossings.* Railroad companies, in operating their cars in crossing public highways, must so regulate the speed of their trains, and give such signals to persons passing, that all may be apprised of the danger of crossing the railroad track, and a failure in any of these duties on their part will render them liable for injuries inflicted, and for wrongs resulting from such omissions.

4. A railroad company should not permit obstructions upon its right of way, near a crossing, which will prevent the public from observing the approach of trains on the track.

5. A railroad company is chargeable with notice of all the perilous circumstances of a crossing constructed by itself.

Appeal from the Circuit Court of Madison county; the Hon. William H. Snyder, Judge, presiding.

Mr. Levi Davis, Jr., for the appellant.

Mr. A. W. Metcalf, for the appellee.

Mr. Justice Craig delivered the opinion of the Court:

This was an action on the case, brought by William Hillmer against the Rockford, Rock Island and St. Louis Railroad Company.

A trial was had before a jury, which resulted in a verdict in favor of the plaintiff for $1681. The court overruled a motion for a new trial, and rendered judgment upon the verdict.

The defendant brings the record here, and relies, for a reversal of the judgment, upon the ground, alone, that the verdict is against the weight of the evidence.

The controversy in this case grew out of an accident that occurred on the 27th day of December, 1872, about six o'clock in the evening, at a place known as Venice crossing, where the highway from Venice to Edwardsville crosses the track of the defendant. The plaintiff, in attempting to cross the track of the defendant with a pair of horses and wagon, was struck by a locomotive attached to a train of passenger cars. His two horses were killed, wagon and harness destroyed, and he seriously and permanently injured.

The plaintiff based his right of recovery upon the ground, the he, in attempting to cross the track, exercised due and proper care, and the defendant neglected and failed to give notice of the approach of the train by ringing a bell or sounding a whistle; that the train was running at a high rate of speed, and defendant, in approaching the crossing, which was a known dangerous one, failed to slacken the speed of the train.

On the other hand, the positions assumed by defendant are: 1st. That the whistle was sounded and the bell rung, as required by law. 2d. That the train was not running at a high rate of speed. 3d. Under the circumstances of the case, it was not the duty of defendant to slacken speed, even if the train had been running at a high rate of speed.

It is insisted, by the defendant, that on the question of ringing a bell or blowing a whistle, the evidence of the plaintiff is negative, while that of the defendant is positive, and that this case, in its facts, is so similar to that of *Chicago and Rock Island Railroad Co.* v. *Still*, 19 Ill. 499, that the decision in that case is conclusive of this.

By reference to the *Still case*, it will be found, that the witnesses in that case who testified they did not hear the sound of the bell or whistle, were, most of them, in a position that they could neither see nor hear what was transpiring, and the others state they did not hear the bell or whistle, while in the case

under consideration, the witnesses were near by, and in a position to have heard, if the bell had been rung or whistle sounded.

The plaintiff in this case testified, that, in returning home from St. Louis, he stopped at Venice, and hitched his team in front of Selb's saloon, which is about thirty yards distant from the railroad crossing. In about ten minutes, he and his hired man, who also had a team, unloosed their horses and started. They listened, but did not hear the cars, a bell or whistle. In his evidence, he said he cautioned his hired man, who drove ahead, to drive slowly, and be careful about the train; that they did drive slowly. The hired man drove over the track; he followed. On approaching the crossing he looked up and down the road, saw no train; crossed the first track, and as he approached the second track, he discovered the head-light. He then attempted to stop his team, but failed, and was struck by the locomotive.

Deitrich Smith, plaintiff's hired man, testified: " I had good hearing; listened, but heard no train, bell or whistle; if there had been a bell ringing, or whistle blowing, I would have heard it; it was a dark night; I looked out for the cars; just as I got on the track I saw the light, and the cars were about ten yards from me; at that time it was not possible for Mr. Hillmer to get off the track; I had just passed over the track when the train passed over; I looked up and down the track, or both ways, before I drove on to the track, and did not see anything there on these tracks at the crossing; this is the midd'e one."

In corroboration of this evidence, the plaintiff introduced five other witnesses, who were, at the time of the accident, within thirty yards of the crossing, and they testified in substance, that they were in a position to have heard the bell or whistle, that they heard the sound of neither, and they are satisfied the bell was not rung and the whistle was not sounded. If either had occurred, they could and would have heard the sound. This evidence can not be regarded as negative testimony, as was said of that in the *Still case*, but it is more like

that in the case of *Chicago, Burlington and Quincy R. R. Co.* v. *Cauffman*, 38 Ill. 426, in which case it was urged, as in this, that the rule announced in the *Still case* should govern, but the court, in disposing of that point, said: "By reference to that case, it will be seen, that the witnesses who testified that they did not hear the sound of the bell or whistle, were, most of them, in a position that they could not see what was transpiring, and the others simply state that they heard neither sound, whilst in this case the witnesses were near at hand and saw, and were in a position to hear either the bell or the whistle if they had been sounded."

But, independent of this fact, the controlling point in the *Still case*, and the one upon which the decision turned, was, that the plaintiff himself was guilty of gross negligence, and was thus responsible for his own misfortune.

It is, however, insisted by the counsel for the defendant, that the weight of the evidence is with the defendant, on the question of ringing the bell and blowing the whistle.

We have given the evidence a critical examination, as this is the vital point in the case, and we have not been able to arrive at the conclusion contended for. On the other hand, we think it is apparent the clear preponderance of the testimony is with the plaintiff.

The defendant called, upon this point, five colored witnesses, who testified that the bell was rung. Their opportunity, however, for knowing the fact was no better than the witnesses for plaintiff. In addition to this, three of them were fairly impeached by proof that their general reputation for truth and veracity was bad. The evidence of the fifth one was shaken, if not entirely destroyed, by proof that he had made a statement upon a material point, out of court, in conflict with his evidence in court.

The only other witness upon this point was the engineer upon the train. He testifies the bell was rung. His reason for thinking such was the fact may not have been satisfactory to the jury. He said, when the fireman jumped off from the engine, he still had the bell-rope in his hand.

This evidence on the part of the defendant proved to be not sufficient, in the minds of the jury, to overbalance that of the plaintiff, and we can not say the jury disregarded the preponderance of the evidence, or failed to arrive at a correct conclusion.

It was a question of fact, purely, for their determination, upon which there was a conflict in the evidence, and under the uniform decisions of this court, we could not disturb the finding of the jury, even if we were inclined to the belief the weight of evidence was with the defendant.

The rule of law on a state of facts disclosed by this record, has been frequently announced by this court, and ought to be well understood.

While the plaintiff may have been guilty of some degree of negligence, yet, if it was slight in comparison with that of the defendant, which was gross, it would be no bar to a recovery. *Chicago, Burlington and Quincy Railroad Co.* v. *Triplett*, 38 Ill. 484.

It is not seriously contended in this case, that the plaintiff failed to exercise that degree of care and caution that a prudent man would. He approached the crossing slowly, listened and looked, in order to avoid danger if a train was coming. His hired hand did the same. Neither saw or heard the train until it was too late to avoid the collision.

There is another fact disclosed by this record, that no doubt had, and justly too, great weight with the jury in arriving at the conclusion that the negligence of the defendant caused the injury. The evidence tends to show that the view of the train was obstructed by corn cribs, standing near the track, so that it was difficult to see the train from the direction from which it came.

It was said in the case of *Chicago, Burlington and Quincy Railroad Co.* v. *Payne*, 59 Ill. 541, a railroad company is chargeable with notice of all the perilous circumstances of a crossing constructed by itself.

A railroad company should not permit obstructions upon its

right of way near a crossing, which will prevent the public from observing the approach of trains upon the track.

It was said by this court, in the case of *Chicago and Rock Island Railroad Co.* v. *Still,* 19 Ill. 508, and the same doctrine has been reaffirmed in subsequent cases, that railroad companies, in operating their cars, must be held, in crossing public highways, to so regulate the speed of their trains, and to give such signals to persons passing, that all may be apprised of the danger of crossing the railroad track. A failure in any of these duties, on their part, should render them liable for injuries inflicted, and for wrongs resulting from its omissions.

Aside from the fact that the jury have found the bell was not rung or whistle sounded, there was evidence tending to prove that the train was running at a high rate of speed over a known dangerous crossing. While the engine-driver fixes the speed at which the train was running at twelve miles per hour, other evidence was introduced that the train was running at a high rate of speed, and this seems to have been corroborated by the fact that one of the horses struck by the engine was carried a distance of 500 or 600 yards before the train stopped.

The jury in this case, by the verdict, have found the plaintiff exercised due care; that the train of defendant was running at a high rate of speed, over a known dangerous crossing, without giving notice of the approach of the train by ringing the bell or sounding the whistle. If these facts be true, and the evidence seems to be sufficient to justify them, we can not disturb the judgment. It will therefore be affirmed.

*Judgment affirmed.*