REX H. LIGHT *et al.*, Trustees, Plaintiffs and Counterdefendants-Appellants, v. CARL E. STEWARD *et al.*, Defendants and Counterplaintiffs-Appellees.

Second District   No. 2—83—0831

Opinion filed October 30, 1984.

Kenneth W. Traum, of Kostantacos, Traum, Reuterfors & McWilliams, and Milton A. Fischer, both of Rockford, for appellants.

John L. Olson, of Schleuter, Ecklund, Olson, Barrett & Moore, of Rockford, for appellees.

JUSTICE LINDBERG delivered the opinion of the court:

Plaintiffs brought this action in the circuit court of Winnebago County to enjoin defendants' use of plaintiffs' property. Defendants counterclaimed for an easement to use plaintiffs' property. The trial court found for defendants and declared an easement. We affirm.

Defendants, Carl and June Steward, own a tract of land in Winnebago County which is surrounded on three sides by the Pecatonica River. The only land access to their property is through the tract of land owned by plaintiffs, Rex and Sarah Light, which lies to the north of the Stewards' tract. On September 24, 1981, the Lights filed their complaint in the present action seeking to enjoin the Stewards from entering the Lights' land. The Stewards answered the complaint and filed a counterclaim seeking a declaration of an easement across the Lights' land and injunction against the Lights' interference with the Stewards' right of access, and money damages.

The bench trial was held on March 1, 1982. The evidence showed that the Lights acquired the northern tract in 1952. The Stewards acquired the southern tract in 1978 from the widow of Don Adams, who died in 1977. Adams acquired the southern tract in 1948. A public

road, Cleveland Road, ends at the northern boundary of the Lights' land. Don Adams and his guests frequently crossed the Lights' land in order to enter and exit the southern tract. The "way" or "lane" they used crossed over the Lights' driveway, through a gate, and over an unpaved path to the northern boundary of the southern tract. Adams and his guests used his land for recreational purposes, and a cottage was built on the property in 1961. The Lights have a residence on their land about 550 feet south of the terminus of Cleveland Road. The Lights raised livestock on their property.

The Stewards also used the lane to reach the southern tract, both as guests of Don Adams and later as owners of that tract. After the Stewards acquired their property, however, a dispute erupted between the parties over the Stewards' use of the lane, which resulted in the Lights' attempt to block access to the lane and their filing of this action. Further evidence regarding the use of the lane will be discussed in relation to the legal issues raised.

The trial court rendered an oral decision on March 5, 1982, declaring an easement in favor of the Stewards. A written order was filed on March 19, 1982, which left open the question of reasonable restrictions. An appeal to this court was dismissed for want of jurisdiction because the order was not final as to all issues. Eventually, on September 9, 1983, a final and appealable order was filed which incorporated by reference the court's order of March 19, 1982, and set forth certain restrictions for the easement declared.

### EXCLUDED TESTIMONY

The Lights contend that the trial court erred in excluding the testimony of Chester Lynn and Warren Duclon relating to an oral agreement between Don Adams and Rex Light. Upon objection by the Stewards, the trial court permitted Lynn's testimony subject to a reserved ruling on its admissibility. The court sustained the Stewards' objection to Duclon's testimony but permitted examination as an offer of proof. Following that offer of proof, the court also excluded Lynn's testimony regarding the agreement.

The substance of the challenged evidence tended to show that Rex Light had agreed to permit Don Adams' use of the lane through Light's property in exchange for Adams' permitting Light to graze cattle on his land. Chester Lynn testified that he heard the conversation in the spring of 1952 between Light and Adams in which the agreement was created. Warren Duclon testified that in 1953 or 1954, on an occasion when Duclon went with Adams to Adams' property by way of the lane on the Lights' property, Adams told Duclon that he

had a verbal agreement permitting his use of the lane in exchange for permitting Light to graze his cattle on Adams' property.

The Stewards' objected to the testimony of both Lynn and Duclon on the bases of hearsay and the Dead Man's Act (Ill. Rev. Stat. 1981, ch. 51, par. 2). The Lights' response at trial was that the conversations constituted admissions against interest, an exception to the hearsay rule, and that the Dead Man's Act was applicable only to cases involving the executor or other representative of a deceased person. In striking Lynn's testimony, the trial court gave the following reasons:

"—on the grounds that it's hearsay and not—not that it's just hearsay. It's not—it really makes no difference what agreement those two parties had. It's what was expressed, I think, and what was the agreement between—what was made known to the present defendants in this case—what was their understanding."

With regard to Duclon's testimony, the trial court simply sustained the Stewards' objection and denied the contention of the counsel for the Lights that the proffered evidence constituted an admission against interest.

On appeal, the Lights argue that the evidence is relevant to show that use of the lane had not been adverse. Further, the Lights argue that the testimony is not excludable because the Dead Man's Act does not apply, because the testimony is not hearsay as the out-of-court statements were not offered for their truth, and because three specific hearsay objections would be applicable in any event. The Stewards maintain that those of the arguments for admissibility not presented to the trial court cannot be urged for the first time on appeal.

■ The general rule for preserving for review a contention that testimony has been wrongfully excluded is that an offer of proof must be made. (*Moore v. Farmers Insurance Exchange* (1982), 111 Ill. App. 3d 401, 444 N.E.2d 220.) Here, an offer of proof was made for both witnesses. However, the Stewards contend that more is necessary: the party offering the excluded testimony must urge on appeal the same bases of admissibility that were presented to the trial court. At least two of the cases cited by the Stewards appear to support this rule of law (*Crimp v. First Union Trust & Savings Bank* (1933), 352 Ill. 93, 98; *Dirksmeyer v. Barnes* (1954), 2 Ill. App. 2d 496, 508-09, 119 N.E.2d 813, 818), although in the latter case an offer of proof was also missing. *Dirksmeyer* relies upon the general proposition that a point not raised in the trial court cannot be urged on appeal. (*Dirksmeyer v. Barnes* (1954), 2 Ill. App. 2d 496, 509, 119 N.E.2d 813, 818;

see *Board of Education v. Kusper* (1982), 92 Ill. 2d 333, 343.) Thus, although the authority is scant, the offeror of excluded testimony is generally limited on appeal to those grounds for admissibility raised in the trial court. See 5 Am. Jur. 2d *Appeal and Error* sec. 604 (1962).

The trial court's remarks in striking Lynn's testimony seem to indicate that that court did not deem the proffered testimony relevant. In order to acquire an easement by prescription, a claimant must show that the use of the land was, among other things, adverse. (*Healy v. Roberts* (1982), 109 Ill. App. 3d 577, 440 N.E.2d 647.) To meet the requirements of adverse use, the use must be with the knowledge and acquiescence of the owner but without his permission. (*Healy v. Roberts* (1982), 109 Ill. App. 3d 577, 440 N.E.2d 647.) If it can be shown that the use has been made pursuant to the permission of the owner of the servient estate, it cannot be classified as being adverse. (*Roller v. Logan Landfill, Inc.* (1974), 16 Ill. App. 3d 1046, 307 N.E.2d 424.) Such permission may be established by a written or oral license or may be inferred from the surrounding circumstances. (*Roller v. Logan Landfill, Inc.* (1974), 16 Ill. App. 3d 1046, 307 N.E.2d 424.) Where there is proof of a parol agreement to use a way, the use has been by license rather than adversely or by claim of right and a prescriptive right has not been established. See *Mueller v. Keller* (1960), 18 Ill. 2d 334.

Here, evidence of an oral agreement between Rex Light and Don Adams for the use of the lane was relevant to disprove adversity in Adams' use of the lane. Since the Stewards have owned their land just since 1978, it was necessary for them to show adversity not only of their use, but also of their predecessor in title to the dominant estate, Don Adams. Thus, the proffered testimony was relevant to whether use of the lane had been adverse for 20 years.

■ The Stewards argued at trial and again on appeal that they have established an easement by prescription in their own right for 20 years as well as by tacking Adams' ownership years to their own. An acceptance of this argument might explain the trial court's remarks to the effect that only what the Stewards knew was relevant. However, this argument cannot succeed. The Stewards' pleadings asserted prescriptive use only by means of tacking their period of use to Adams'. Moreover, an easement of the nature of the one claimed here, where it is exercised in connection with occupancy of other land and where one terminus of the claimed easement is on the land of the party claiming it, is considered as appurtenant rather than one in gross. (*Taylor v. Lanahan* (1979), 73 Ill. App. 3d 829, 392 N.E.2d 425.) Prior to 1978, the Stewards had no land to which the easement right may

have been appurtenant. The Stewards' use of the lane prior to their 1978 acquisition of the neighboring land was as guests of the Adamses. As such, that use could not satisfy the exclusivity element of a prescriptive easement. Exclusivity means that the claimant's rights do not depend upon the rights of others, such as the Adamses. (*Healy v. Roberts* (1982), 109 Ill. App. 3d 577, 440 N.E.2d 647.) Since prescriptive use for 20 years could not be shown in the Stewards alone, evidence relating to the nature of Don Adams' use was necessarily relevant to the question of whether a prescriptive easement had been established.

■ The issue of the inapplicability of the Dead Man's Act has not been waived by the Lights because it was raised at trial. The Dead Man's Act is very limited and is inapplicable to the testimony of Chester Lynn and Warren Duclon for several reasons. The reason raised at trial is sufficient to dispose of the issue here: the statute applies only to a "civil action in which any party sues or defends as the representative of a deceased or incompetent person." (Ill. Rev. Stat. 1981, ch. 51, par. 2.) Don Adams is the deceased person whose conversations are at issue and no party here either sues or defends as his representative.

■ With regard to hearsay, the Lights now urge for the first time that the testimony of Lynn and Duclon does not constitute hearsay evidence. Pursuant to the previous discussion, this argument was waived as not having been offered at the trial. Further, the other two hearsay exceptions now urged by the Lights to justify use of Lynn's and Duclon's testimony, declarations as to private boundaries and declarations by persons in possession of property, were clearly not raised in the trial court and therefore were waived. The trial court's exclusion orders are affirmed because the Lights failed to preserve the correct grounds for admissibility.

### EASEMENT OF NECESSITY

The Lights contend that the trial court's order cannot be sustained on the basis of a finding of an easement by necessity. The Stewards' original counterclaim sought declaration of an easement on two grounds: easement of necessity by implication and easement by prescription. Their amended counterclaim, upon which the case was tried, relied solely upon the prescription theory. In its oral ruling of March 5, 1982, the trial court relied on both theories in finding an easement, as is manifested by the following excerpt:

> "I—I do feel that this has gone on—it went on for a long enough period of time that they meet the requirements—that

the defendants have met the requirements by tacking to gain an interest by prescription—at least by prescription over the plaintiffs' property. His—the plaintiffs' Complaint for Injunction is denied. The defendants' Counterclaim, Easement of Necessity—although it's not really set forth that way in the—in the Counterclaim itself—it doesn't really say it's of necessity, but it is obvious from the evidence that it is of necessity—is granted subject to reasonable restrictions."

The trial court's written orders of March 19, 1982, and September 9, 1983, make no reference to the theory relied upon. They do, however, declare an easement by way of entering judgment for the Stewards on count I of the amended counterclaim, a count which relies solely upon the prescription theory.

Actually, there is no "easement by necessity." An easement must be founded on a deed or other writing, or on prescription, which presumes a previous grant. (*The Fair v. Evergreen Park Shopping Plaza of Delaware, Inc.* (1954), 4 Ill. App. 2d 454, 124 N.E.2d 649.) Necessity is one element of an "easement of necessity by implication," a doctrine based upon implying the intent of the parties to a conveyance by which one parcel is separated from another to grant or reserve an easement. (See *Frantz v. Collins* (1961), 21 Ill. 2d 446.) Essential elements which must exist to establish an easement by implication are: (1) there must be unity of ownership and separation of the title; (2) before separation occurs, the use which would give rise to an easement must have been so long continued, obvious or manifest to that degree which will show the use was meant to be permanent; and (3) it is necessary that the use of the claimed easement be essential to the beneficial enjoyment of the land granted or retained. *O'Hara v. Chicago Title & Trust Co.* (1983), 115 Ill. App. 3d 309, 450 N.E.2d 1183.

Here, at least one essential element for this type of easement was neither pleaded nor proved: unity of ownership and separation of title. Proof as to the existence of a common grantor is generally considered necessary to establish this element. (*Zacny v. Sasyk* (1975), 30 Ill. App. 3d 93, 332 N.E.2d 568.) No such evidence was introduced. Thus, whether or not the use of the lane was necessary for the Stewards' enjoyment of their land, they did not establish an easement of necessity by implication.

### EASEMENT BY PRESCRIPTION

The Lights further contend that defendants have failed to establish an easement by prescription. In order to acquire an easement by

prescription, a claimant must show that the use of the land was adverse, exclusive, continuous and uninterrupted, and under claim of right for a period of at least 20 years. (*Petersen v. Corrubia* (1961), 21 Ill. 2d 525; *Healy v. Roberts* (1982), 109 Ill. App. 3d 577, 440 N.E.2d 647.) Where there has been privity between the users of the property, periods of use may be tacked together in order to satisfy the required prescription period. (*Healy v. Roberts* (1982), 109 Ill. App. 3d 577, 440 N.E.2d 647; *Roller v. Logan Landfill, Inc.* (1974), 16 Ill. App. 3d 1046, 307 N.E.2d 424.) At issue here were the elements of adversity and exclusivity and whether the Stewards needed to and did successfully tack the period of use by Don Adams to their own.

With regard to the necessity to the Stewards' case of tacking Don Adams' period of use to their own, this question has already been discussed in relation to the relevance of the proffered testimony of Chester Lynn and Warren Duclon. Since the Stewards could not establish prescriptive use for 20 years solely by themselves, they must rely upon Adams' use of the lane during his period of owning the southern tract.

■ In order to rely on Adams' period of use, defendants Stewards must have shown privity between themselves and Adams. The requisite of privity exists when the latter user has succeeded to the interest of the earlier user by *inter vivos* conveyance, by descent, by devise, or by involuntary conveyance. (*Roller v. Logan Landfill, Inc.* (1974), 16 Ill. App. 3d 1046, 307 N.E.2d 424.) Privity was established here by the Lights' stipulation that Don Adams' property passed to his wife, Lillian Adams, upon the former's death in 1977 and by defendants' exhibit No. 12, a copy of the deed by which Lillian Adams conveyed the property to the Stewards.

■ With regard to the exclusivity factor, the Lights point out that many others besides Don Adams and the Stewards used the lane over the last few decades. However, as has been pointed out in relation to the Stewards' use during the period of Don Adams' ownership, the use of the lane by the others was as guests of the owners of the southern tract. To establish exclusivity, it is not necessary to show that only the claimant has made use of the way, because exclusive use means that the claimant's right to use the lane does not depend upon a like right in others. (*Leesch v. Krause* (1946), 393 Ill. 124; *Healy v. Roberts* (1982), 109 Ill. App. 3d 577, 440 N.E.2d 647.) The Stewards' use of the lane from 1978 and the Adamses' use prior to that were in their own right, independent from any other.

■ The most difficult question here relates to whether adversity was established. Whether there was adverse use of a way or the use

of the way was only permissive is a question of fact for the trial court which will not be disturbed unless manifestly against the weight of the evidence. (*Petersen v. Corrubia* (1961), 21 Ill. 2d 525; *Roller v. Logan Landfill, Inc.* (1974), 16 Ill. App. 3d 1046, 307 N.E.2d 424.) To meet the requirements of adverse use, the use must be with the knowledge and acquiescence of the owner but without his permission. (*Healy v. Roberts* (1982), 109 Ill. App. 3d 577, 440 N.E.2d 647.) Where the evidence shows that a use is merely permissive from the owner, the use is not adverse and furnishes no basis upon which a right of way by prescription can rest. *Mueller v. Keller* (1960), 18 Ill. 2d 334; *Roller v. Logan Landfill, Inc.* (1974), 16 Ill. App. 3d 1046, 307 N.E.2d 424; *Rita Sales Corp. v. Bartlett* (1970), 129 Ill. App. 2d 45, 263 N.E.2d 356.

Here, the Lights maintained that Don Adams', and subsequently the Stewards', use was permissive because of an oral agreement under which Adams could use the lane for access in return for allowing the Lights to graze cattle. The Lights' attempt to prove the existence of this agreement through the testimony of Chester Lynn and Warren Duclon was disallowed by the trial court, and we have affirmed that exclusion. However, Rex Light also mentioned the agreement in his testimony. During his direct examination, Light was asked about a conversation with Carl Steward. Light testified that he had told Steward about his agreement with Don Adams under which Adams could use the lane in exchange for permitting Light's cattle to graze on Adams' land. Light had received the impression that Steward agreed to the same arrangement.

The Lights now attempt to characterize this testimony as a direct assertion by the witness of the existence of the agreement mentioned. However, a close reading of the record reveals that Light merely testified to what he told Steward. Nowhere does it appear that Light testified directly about his oral agreement with Don Adams.

Carl Steward, on the other hand, testified that Rex Light never told him about the previous agreement, that he himself had no agreement with Light about use of the lane, that he had never asked for permission to use the lane, that he was aware of no agreement, and that he was not aware of anyone ever asking permission. June Steward made similar denials. Francis Linder, Howard Black, and Polly Knous, three people who frequently used the lane as guests of Don Adams, each testified for the Stewards that he or she knew of no agreement or request for permission to use the lane by anyone.

It can be seen, then, that the evidence is conflicting on whether Rex Light and Carl Steward came to an agreement. The testimony of

each party is positive and directly contradictory of the other. In light of this, the trial court could have justifiably believed Steward and found that the Stewards' use was adverse.

With regard to Adams' use, the witnesses for the Stewards could not deny the existence of an agreement for permissive use, but could only deny awareness of such an agreement. Because of this, their testimony should be characterized as negative and would not be entitled to the same weight as positive testimony of the agreement's existence. (*West Chicago Street R.R. Co. v. Mueller* (1897), 165 Ill. 499; see *Bontz v. Stear* (1918), 285 Ill. 599, 602, where testimony of a witness to the oral grant of permission to use a road claimed as an easement was "not refuted except in the negative manner by witnesses who stated that they did not hear conversations between these parties concerning this road.") However, the Lights failed to produce positive testimony of the agreement's existence. The testimony of Lynn and Duclon was excluded and Rex Light did not directly assert that he gave Don Adams permission to use the lane.

While the burden of proof is on the party claiming the prescriptive right (*Castle v. Yenerich* (1981), 95 Ill. App. 3d 39, 419 N.E.2d 677), the law recognizes rebuttable presumptions with regard to the establishment of adversity. Where a way has been used openly, uninterruptedly, continuously and exclusively for more than 20 years and the origin of such way is not shown, there is a rebuttable presumption of adversity. (*Petersen v. Corrubia* (1961), 21 Ill. 2d 525; *Mueller v. Keller* (1960), 18 Ill. 2d 334.) However, the use of vacant and unenclosed land is presumed to be permissive and not adverse. (*Poulos v. F.H. Hill Co.* (1948), 401 Ill. 204; *Monroe v. Shrake* (1941), 376 Ill. 253.) Thus, the presumption of adversity is not applicable to vacant and unenclosed land. (*Roller v. Logan Landfill, Inc.* (1974), 16 Ill. App. 3d 1046, 307 N.E.2d 424; *Rita Sales Corp. v. Bartlett* (1970), 129 Ill. App. 2d 45, 263 N.E.2d 356.) Nor can the presumption of adversity be employed where there is evidence showing the origin of the alleged easement. *Rita Sales Corp. v. Bartlett* (1970), 129 Ill. App. 2d 45, 263 N.E.2d 356.

■ The parties make much of whether the lane was enclosed. The evidence is clear that the Lights have maintained a gate at the north end of their property for well over 20 years, although it was not locked until the present controversy erupted. Moreover, the land was not vacant, as evidenced by the fact that the way ran by the Lights' residence on the northern tract. Therefore, the use cannot be presumed permissive.

The only possible evidence showing the origin of the alleged ease-

ment or rebutting the presumption of adversity related to the alleged agreement between Rex Light and Don Adams. Because the trial court's exclusion of the testimony of Chester Lynn and Warren Duclon must be sustained and this court agrees that Rex Light did not directly assert the existence of the agreement, the presumption of adversity applies and the trial court must be affirmed.

The circuit court of Winnebago County's finding of an easement cannot be sustained on the easement of necessity by implication theory because the element of unity of title was neither pleaded nor proved. The finding of easement by prescription is affirmed, however, because of the failure of plaintiffs' evidence on permissive use. The proper bases for admitting the testimony regarding an agreement showing the use to be permissive were not presented to the trial court and therefore were waived for purposes of consideration of the alleged error on appeal.

Affirmed.

UNVERZAGT and SCHNAKE, JJ., concur.